FILED

2019 SEP 20 PM 3: 57

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE No. 6:19-cr-208-ORL-4F-DCJ
    18 U.S.C. § 1349

SALVATORE ESPOSITO
JOSEPH ESPOSITO

## INFORMATION

The United States Attorney charges:

### COUNT ONE

#### A. Introduction

At times material to this Information:

1. U.S. Coin Bullion LLC (U.S. Coin Bullion) was a Florida company that claimed to be in the business of selling precious metals.

#### B. Conspiracy

2. Beginning at a time unknown to the United States Attorney, but beginning at least by in or about 2014, and continuing thereafter through and including in or about July 2019, in the Middle District of Florida, and elsewhere, the defendants,

**SALVATORE ESPOSITO**
**JOSEPH ESPOSITO**

did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the United States Attorney:

    a.    To commit mail fraud, by knowingly and with intent to defraud, devising, and intending to devise, a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that related to material facts, and, for the purpose of executing such scheme and artifice, knowingly placing in any post office and authorized depository for mail matter to be sent and delivered by the United States Postal Service; knowingly depositing and causing to be deposited to be sent and delivered by a private and commercial interstate carrier; knowingly taking and receiving from the United States Postal Service and a private and commercial interstate carrier; and knowingly causing to be delivered by mail and private and commercial interstate carrier, according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, any matter and thing, in violation of 18 U.S.C. § 1341; and

    b.    To commit wire fraud, by knowingly and with intent to defraud devising and intending to devise a scheme and artifice to defraud, and for obtaining money and property, by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing the

aforesaid scheme and artifice to defraud, knowingly transmitting and causing to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### C. Manner and Means

3. It was part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did unlawfully devise and execute a scheme and artifice to defraud investors, and representatives of investors, of money and property by means of materially false and fraudulent pretenses, representations and promises.

4. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did obtain money, and attempt to obtain money, from individuals and others through investments offered in connection with U.S. Coin Bullion related to the purchase of precious metals, such as silver.

5. It was a further part of the conspiracy that some of the investments in precious metals with U.S. Coin Bullion offered by SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators

known and unknown to the United States Attorney, were not legitimate investments, but were a "Ponzi" scheme by which money from later investors would be paid to earlier investors.

6. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did solicit individuals to purchase precious metals, such as silver, by means of false and fraudulent pretenses, representations and promises that related to material facts, including, but not limited to, the following:

    a. False claims that the precious metals would be delivered to a depository that was identified on the purchase order;

    b. False claims that money used to purchase precious metals would be secured by actual precious metals; and

    c. False claims that money provided to U.S. Coin Bullion to purchase precious metals would be used to purchase precious metals.

7. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did prepare, and caused to be prepared, documents and other materials that contained some of the false

claims described in paragraph 6 above, including, but not limited to, a contract and purchase order that were provided to customers.

8. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did send, and caused to be sent, to investors and others by United States Mail and interstate wire, the documents referenced in paragraph 7 above.

9. It was a further part of the conspiracy that SALVATORE ESPOSITO and JOSEPH ESPOSITO would and did cause the salespeople of U.S. Coin Bullion to make the false claims described in paragraph 6 above in their telephones calls with customers.

10. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did use some of their customers' funds, without their knowledge or consent, to "leverage" the purchase of silver for U.S. Coin Bullion, which consisted of using customer funds to obtain financing that was used to purchase silver for the benefit of U.S. Coin Bullion.

11. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and

5

unknown to the United States Attorney, would and did use the money that had been invested with U.S. Coin Bullion to purchase silver for purposes other than what had been represented to investors, including to purchase silver for itself on margin.

12. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, in an effort to lull investors into a false sense of security concerning their investments and to convince investors that their investments were secured by precious metals that were held at a depository, would and did cover-up, and attempt to cover-up, their conspiracy and scheme to defraud by causing customers to be provided with false account statements that represented that any losses that they experienced were due solely to market factors when, in truth and in fact, as the defendants then and there well knew, the defendants had lost much of their customers' money by using those funds to "leverage" silver purchases for the benefit of U.S. Coin Bullion.

13. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did cover-up, and attempt to cover-up, their conspiracy and scheme to defraud by using funds from

investors who had purchased precious metals for physical delivery to pay other investors and other business expenses as opposed to purchasing the precious metals that they had ordered.

14. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did use portions of the money that was obtained as a result of devising and executing the conspiracy and scheme and artifice to defraud for their own personal use.

15. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did use the United States Mail and interstate wires in furtherance of the conspiracy and scheme and artifice to defraud, including by sending by United States Mail copies of various documents to investors located in the Middle District of Florida and outside of Florida, by receiving by United States Mail checks for payments from investors, by making interstate telephone calls from the Middle District of Florida to customers located outside of Florida, by receiving interstate telephone calls in the Middle District of Florida from customers located outside of Florida, by using interstate wires to send emails to customers located outside of Florida, by using interstate wires to receive emails in the

Middle District of Florida from customers outside of Florida, and by processing credit card payments in the Middle District of Florida that were routed using servers located outside of Florida.

16. It was a further part of the conspiracy that SALVATORE ESPOSITO, JOSEPH ESPOSITO, and other co-conspirators known and unknown to the United States Attorney, would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## FORFEITURE

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy of the violation of 18 U.S.C. §§ 1341 and 1343, in violation of 18 U.S.C. § 1349, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, the following: a money judgment in the amount of at least $7,418,789.61 representing the amount of proceeds obtained by the defendants as a result of the allegations alleged in Count One of the Information.

4. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

                                          MARIA CHAPA LOPEZ
                                          United States Attorney

By: _____
      Roger B. Handberg
      Assistant United States Attorney
      Chief, Orlando Division

By: _____
      Sara C. Sweeney
      Assistant United States Attorney
      Deputy Chief, Orlando Division